Patricia McKenna
Senior Attorney
U.S. Department of Justice
Environmental Enforcement Section
Environment and Natural Resources Division
P.O. Box 7611, Ben Franklin Station
Washington, DC  20044-7611
(202) 616-8763

Susan Steele
Assistant United States Attorney
Office of the United States Attorney
District of New Jersey
970 Broad Street, Room 400
Newark, NJ  07102
(973) 645-2920

Scott B. Dubin
Deputy Attorney General
New Jersey Division of Law
Richard Hughes Justice Complex
25 Market Street, P.O. Box 093
Trenton, NJ  08625-0093

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF NEW JERSEY<br><br>Plaintiff,<br><br>v.<br><br>RP BAKING, LLC<br><br>Defendant. | Civil Action No. |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Regional Administrator of the United States Environmental Protection Agency ("EPA") for Region 2, and the State of

New Jersey, by the authority of the Attorney General of New Jersey and through the undersigned attorney acting at the request of the New Jersey Department of Environmental Protection ("NJDEP"), files this complaint and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil environmental enforcement action under Section 113(b) of the Clean Air Act ("CAA"), 42 U.S.C § 7413(b), and the Air Pollution Control Act of 1954 ("New Jersey Air Act"), N.J.S.A. 26:2C-1, et seq. The United States and the State of New Jersey seek civil penalties from Defendant RP Baking, LLC ("Defendant") for violations of the CAA and the federally-approved New Jersey State Implementation Plan ("SIP") at the baking facility where Defendant owns the baking equipment and operates the facility located at 840 Jersey Street in Harrison, Hudson County, New Jersey ("Facility").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action and Defendant pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345 and 1355.

3. Venue in this matter properly lies in the District of New Jersey where the alleged violations took place and where the Facility is located. 28 U.S.C. §§1391(b) and (c).

## AUTHORITY

4. Authority to bring this action is vested in the United States Department of Justice pursuant to 28 U.S.C. §§ 516 and 519 and Section 305(a) of the CAA, 42 U.S.C. § 7605(a).

## NOTICE

5. Under CAA Section 113(a)(1), 42 U.S.C. § 7413(a)(1), when the Administrator finds that a person has violated or is in violation of an applicable implementation plan, the Administrator shall notify that person, as well as the State in which the person operates, of such a finding. The Administrator is then authorized under CAA Section 113(b), 42 U.S.C. § 7413(b), to commence a civil action for the SIP violation at any time more than thirty days following the date of the Administrator's notification under CAA Section 113(a)(1), 42 U.S.C. § 7413(a)(1).

6. Notice of the commencement of this action has been given to the appropriate air pollution control agency in the State of New Jersey, as required by Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

7. Pursuant to Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1), notice of the violations of the New Jersey SIP and Title V Operating Permit that are alleged in this Complaint were given to the State of New Jersey and Defendant on April 17, 2007, which is more than 30 days prior to the filing of this Complaint.

## DEFENDANT

8. Defendant has operated the Facility from on or about June 26, 2006, when the Facility's baking equipment and operation was transferred from Pechter's Baking Group, LLC to Defendant. Defendant is, and at all times relevant hereto was, a New Jersey limited liability company.

9. Defendant is a "person" as defined in Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

10. Defendant is an "owner or operator" of a stationary source within the meaning of Section 112(a) of the CAA, 42 U.S.C. § 7412(a). A "stationary source" is "any building, structure, facility, or installation which emits or may emit any air pollutant." 42 U.S.C. § 7412(a)(3).

## STATUTORY AND REGULATORY BACKGROUND

### CAA and National Ambient Air Quality Standards

11. The CAA was enacted to protect and enhance the quality of the Nation's air so as to promote the public health and welfare and the productive capacity of its population. Section 101(b)(1) of the CAA, 42 U.S.C. § 7401(b)(1).

12. Section 109(a) of the CAA, 42 U.S.C. § 7409 requires the Administrator of EPA to publish national ambient air quality standards ("NAAQS") for specified air pollutants. The NAAQS establishes primary air quality standards to protect public health and secondary standards to protect the public welfare, from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air. Section 109(b) of the CAA, 42 U.S.C. § 7409(b).

13. The Administrator has promulgated a NAAQS for ozone. 40 C.F.R. §§ 50.9 and 50.10 (July 18, 1997).

14. Ozone is formed when volatile organic compounds (VOCs") react with pollutants, such as nitrogen oxides, in the presence of sunlight. VOCs are therefore considered a precursor to ozone and are regulated.

15. Pursuant to Section 107(d)(1)(A) of the CAA, 42 U.S.C. § 7407(d)(1)(A), each state is required to designate those areas, or districts, within its boundaries where the air

quality attains the NAAQS, fails to attain the NAAQS, or cannot be classified due to insufficient data (unclassifiable). Areas that meet the NAAQS for a particular pollutant are designated "attainment" areas for that pollutant, while areas that do not meet the NAAQS for a particular pollutant are designated "non-attainment" areas.

16. The Facility is located in Hudson County, New Jersey, which at all times relevant to this action, has been a non-attainment area for ozone. 56 Fed. Reg. 56694, 56800 (Nov. 6, 1991); 40 C.F.R. § 81.331.

## State Implementation Plan

17. Section 110(a) of the CAA, 42 U.S.C. § 7401(a), requires each state to submit to EPA, for approval, a plan that provides for the implementation, maintenance, and enforcement of the NAAQS in each air quality control region in the state and sets forth requirements that must be included in each plan. The EPA-approved plans are known as State Implementation Plans ("SIPs").

18. Pursuant to Sections 110 and 182 of the CAA, and Section 8 of the New Jersey Air Act, N.J.S.A. 26:2C-9, New Jersey adopted Title 7, Chapter 27, Subchapter 16 of the New Jersey Administrative Code (N.J.A.C. 7:27-16), entitled "Control and Prohibition of Air Pollution by Volatile Compounds." EPA approved N.J.A.C. 7:27-16, with an effective date of July 1, 1976. 41 Fed. Reg. 27833 (July 7, 1976). EPA approved the most recent revisions to N.J.A.C. 7:27-16 into the SIP on July 31, 2007. 72 Fed. Reg. 41626 (July 31, 2007). Pursuant to Section 110 of the CAA, it is therefore federally enforceable, as approved. See 40 C.F.R. § 52.1605.

19. The SIP is made up of EPA-approved rules applicable to specific geographic areas within the state. Since the Facility is located in Harrison, Hudson County, New Jersey, the SIP provisions applicable to the Facility are those adopted by the State of New Jersey and approved into the SIP by EPA.

20. The EPA-approved N.J.A.C. 7:27-16.1 defines "volatile organic compounds" or "VOC" to mean any compound of carbon (other than carbon monoxide, carbon dioxide, carbonic acid, metallic carbides, and ammonium carbonate) that participates in atmospheric photochemical reactions.

21. Bakery ovens are "source operations" to which N.J.A.C. 7:27-16 applies.

22. N.J.A.C. 7:27-16.16(c) prohibits emitting VOCs into the outdoor atmosphere from any source operation in excess of the maximum allowable emission rate.

23. N.J.A.C. 7:27-16.16(d) provides a formula for establishing maximum allowable emission rates for VOC emissions from source operations.

24. The State used the formula to establish the maximum allowable emission rate for Oven 1 at less than or equal to 3.0 pounds per hour (lb/hr) and for Oven 2 at less than or equal to 3.5 lb/hr.

**Reasonably Available Control Technology**

25. Within areas classified as nonattainment, Section 172(c)(1) of the CAA, 42 U.S.C. § 7502 requires implementation of "reasonably available control technology" ("RACT") on existing sources in the area. EPA defines "RACT" as the lowest emission limitation that a particular source is capable of meeting by application of reasonably available and economically feasible control technology. 44 Fed. Reg. 53762 (Sept. 17, 1979).

## Title V Operating Permit

26. Title V of the CAA, 42 U.S.C. §§ 7661-7661f, sets forth requirements for the establishment, development, and implementation of a state or federal permit program.

27. Section 502(a) of the Act provides that after the effective date of any permit program approved or promulgated pursuant to Title V of the Act, it shall be unlawful for any person to violate any requirement of a permit issued under Title V of the Act or to operate a Title V affected source, except in compliance with a permit issued by a permitting authority under Title V of the Act.

28. Section 502(b) of the Act requires EPA to promulgate regulations establishing the minimum elements of a permit program to be administered by any air pollution control agency and sets for the procedures by which EPA will approve, oversee, and withdraw approval of state operating permit programs.

29. 40 C.F.R. Part 70, promulgated pursuant to Title V of the Act, among other things, sets forth corresponding minimum requirements for state operating permit programs.

30. 40 C.F.R. Part 71 sets forth the comprehensive federal air quality operating permits program consistent with the requirements of Title V of the Act, and defines the requirements and the corresponding procedures by which EPA will issue title V operating permits.

31. Section 502(d)(1) of the Act requires each State develop and submit, to the Administrator, a permit program meeting the requirements of Title V of the Act.

32. In accordance with Section 502(d)(1) of the Act, New Jersey developed and submitted N.J.A.C. 7:27-22 (the New Jersey Title V Operating Permit program) to meet the requirements of Title V of the Act and to meet the requirements of 40 C.F.R. Part 70, promulgated pursuant to Section 502(b) of the Act.

33. EPA granted interim approval to the New Jersey Title V Operating Permit program with an effective date of June 17, 1996, 61 Fed. Reg. 24,715 (May 16, 1996), and granted final approval with an effective date of November 30, 2001. 66 Fed. Reg. 63,168 (Dec. 5, 2001). New Jersey's Title V Operating Permit program is currently codified at Title 7, Subchapter 22 of the New Jersey Administrative Code, entitled, "Operating Permits" (N.J.A.C. 7:27-22).

34. Section 504(a) of the Act and the New Jersey Title V Operating Permit program regulations have at all relevant times required that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with applicable requirements of the Act and the requirements of the applicable implementation plan.

35. Section 503(b)(2) of the Act provides that the regulations promulgated pursuant to Section 502(b) of the Act, shall include requirements that the permittee periodically (but no less frequently than annually) certify that its facility is in compliance with any applicable requirements of the Title V Operating Permit and that the permittee promptly report any deviations from the operating permit requirements to the permitting authority.

36. N.J.A.C. 7:27-22.19(f) provides that all New Jersey Title V Operating Permits shall include a provision that requires annual compliance certifications to be submitted to EPA and NJDEP, the permitting authority.

37. On April 17, 2001, New Jersey issued the Facility a Title V Operating Permit, activity number BOP990001 (Title V Operating Permit or Permit), and amended the Permit on September 21, 2005 and August 16, 2006. The Facility's Permit includes a requirement that the permitee submit to EPA and NJDEP an annual certification of compliance.

38. The Facility's Title V Operating Permit in effect at the time of the violations includes the SIP VOC RACT emission limits of 3.0 pounds per hour and 3.5 pounds per hour, as applicable requirements for Ovens 1 and 2, respectively.

### Enforcement Provisions

39. Section 113(b)(1) of the Act, 42 U.S.C. § 7413(b)(1), provides that EPA shall, as appropriate, commence a civil action for a permanent or temporary injunction or to assess or recover a civil penalty for violations of any requirement or prohibition of an applicable implementation plan.

40. Section 113(b)(2) of the Act provides that EPA shall, as appropriate, commence a civil action for a permanent or temporary injunction or to assess or recover a civil penalty for violations of any other requirement or prohibition of, including but not limited to any rule, order, waiver or permit promulgated, issued or approved.

41. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), EPA may commence a civil action for an injunction and to recover per day civil penalties for each violation of the CAA, including violations of a SIP and violations of a Title V Operating Permit. A person

who violates the CAA or an applicable SIP or a Title V Operating Permit is liable for a civil penalty of up to $32,500 per day for violations occurring between March 15, 2004, and January 12, 2009, and up to $37,500 per day for violations occurring after January 12, 2009, as provided for in the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701. See 40 C.F.R. Part 19; 69 Fed. Reg. 7126 (Feb. 13, 2004); 73 Fed. Reg. 239 (Dec. 11, 2008).

## GENERAL ALLEGATIONS

42. From on or about June 26, 2006, Defendant has operated the Facility, which is subject to the New Jersey SIP and the New Jersey Title V Operating Permit program.

43. The Facility is a "stationary source" within the meaning of Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and as defined in Section 112(a)(3) of the CAA, 42 U.S.C. § 7412(a)(3).

44. The Facility is a "major source" of pollution as that term is defined in Sections 112(a) and 501(2) of the CAA, 42 U.S.C. §§ 7412(a) and 7661(2).

45. The Facility consists of two buildings and produces baked goods. At all times relevant to this action, the Defendant has operated two natural gas-fired ovens at the Facility, identified in the Facility's Title V Operating Permit as Ovens 1 and 2.

46. Ovens 1 and 2 produce yeast-leavened products. VOC emissions are generated as by-products of the fermentation process.

47. On November 4, 1993, Pechter's Baking Group, LLC ("Pechter's"), a former operator of the Facility, conducted stack tests on each stack associated with Ovens 1 and 2. The results of the stack tests indicated that VOC emissions from Oven 1 were greater

than 3.00 pounds per hour; and VOC emissions from Oven 2 were greater than 3.50 pounds per hour.

48. On August 29, 2002, Pechter's conducted stack tests on each of the four stacks associated with Oven 1. The result of the stack tests indicated that VOC emissions from Oven 1 were greater than 3.00 pounds per hour.

49. On June 25, 2004, Pechter's conducted stack tests on each of the four stacks associated with Oven 1. The results of the stack tests indicated that VOC emissions from Oven 1 were greater than 3.00 pounds per hour.

50. On May 9, 2006, Pechter's conducted stack tests on each of the four stacks associated with Oven 1. The results of the stack tests indicated that VOC emissions from Oven 1 were greater than 3.00 pounds per hour.

51. On June 26, 2006, Defendant took over operation of the Facility from Pechter's, and on August 16, 2006, NJDEP approved an administrative amendment to the Facility's Title V Operating Permit transferring it from Pechter's to Defendant.

52. On December 13, 2006, NJDEP issued an Administrative Order of Revocation and Notice of Civil Administrative Penalty Assessment, PEA060002-12100 to Pechter's for its failure to operate the Facility in compliance with VOC emission limits required by the New Jersey SIP and the Facility's Title V Operating Permit.

53. On April 17, 2007, EPA issued Pechter's and Defendant a Notice of Violation for their failure to comply with VOC emission limits required by the New Jersey SIP and the Facility's Title V Operating Permit. This Notice of Violation alleged that as of June 26, 2006, Defendant was exceeding VOC RACT emission limits required by the New Jersey SIP and

included as applicable requirements in the Facility's Title V Operating Permit for Oven 1 and Oven 2.

54. On May 29, 2008, NJDEP issued Defendant a Notice of Violation (NOV), PEA080001-12100, for its failure to submit an equipment protocol and conduct monthly monitoring and recordkeeping pursuant to N.J.A.C. 7:27-22.16(o).

55. On August 31, 2009, NJDEP issued an NOV to Defendant for violations of VOC RACT emissions limits and destruction efficiency limits included as applicable requirements in the Facility's Title V Operating Permit.

## CLAIM FOR RELIEF

56. Paragraphs 1 through 55 of the Complaint are realleged and incorporated herein.

57. As of June 26, 2006, Defendant exceeded VOC RACT emission limits required by the New Jersey SIP, N.J.A.C. 7:27-16.16(c) and included in the Facility's Title V Operating Permit, activity number BOP990001, for Oven 1 and Oven 2, and therefore failed to comply with the New Jersey SIP and the Facility's Title V Operating Permit.

58. To date, Defendant has not established continuous compliance with VOC RACT emission limits required by the New Jersey SIP and included in the Facility's Title V Operating Permit.

59. Based on these violations and pursuant to Section 113(b) and 113(e)(2) of the CAA, 42 U.S.C. § 7413(b) and § 7413(e)(2), defendant is liable for injunctive relief requiring that Oven 1 and Oven 2 be operated in compliance with the NJ SIP and the Facility's Title V Operating Permit and civil penalties of up to $32,500 per day for violations of the CAA and the

NJ SIP and Title V Operating Permit issued there under occurring between March 15, 2004, and January 12, 2009, and up to $37,500 per day for violations of the CAA and the NJ SIP and Title V Operating Permit issued there under occurring after January 12, 2009, as provided for in the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701. See 40 C.F.R. Part 19; 69 Fed. Reg. 7126 (Feb. 13, 2004); 73 Fed. Reg. 239 (Dec. 11, 2008).

## PRAYER FOR RELIEF

WHEREFORE, based upon all of the allegations contained herein, the United States and the State of New Jersey respectfully request that this Court:

1. Order Defendant to remedy its past violations by, among other things, requiring Defendant to install and operate, as appropriate, reasonably available control technology at its Facility, for each VOC pollutant subject to regulation under the New Jersey SIP and included in the Facility's Title V Operating Permit.

2. Assess a civil penalty against Defendant RP Baking LLC for each day of violation of the Clean Air Act and the regulations and permit issued there under as alleged in this Complaint, in the amount of $32,500 per day for violations occurring between March 15, 2004, and January 12, 2009, and up to $37,500 per day for violations occurring after January 12, 2009.

3. Award the United States and the State of New Jersey their costs in this action; and

4. Grant the United States and the State of New Jersey such other relief as the Court deems just and proper.

Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

By: _____
Patricia A. McKenna
Senior Attorney
Environmental Enforcement Section
601 D Street, NW
Room 6927
Washington, D.C. 20004
(202) 616-6517


PAUL J. FISHMAN
United States Attorney
District of New Jersey

Susan Steele
Assistant United States Attorney

Office of the United States Attorney
Civil Division
District of New Jersey
970 Broad Street, 7th Floor
Newark, NJ 07102
(973) 645-2920

PAULA T. DOW
Attorney General
State of New Jersey

By: _____
Scott B. Dubin
Deputy Attorney General
Division of Law
Richard J. Hughes Justice Complex
25 Market Street, P.O. Box 093
Trenton, NJ 08625-0093
(609) 633-8713

OF COUNSEL:

Kara E. Murphy
Assistant Regional Counsel
Office of Regional Counsel, Air Branch
U.S. Environmental Protection Agency, Region II
290 Broadway, 16th Floor
New York, NY 10007-1866
(212) 637-3211